IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2020 FEB 14  PM 2: 20

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| GULFSTREAM AEROSPACE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. CV416-127 |
| OCELTIP AVIATION 1 PTY LTD, | ) ) | |
| Defendant. | ) ) ) | |

**O R D E R**

Before the Court is Plaintiff's Amended Application to Confirm Arbitration Award (4:16-cv-127, Doc. 1, as amended, Doc. 14), Defendant's Application to Vacate (4:16-cv-177, Doc. 1), and Defendant's Motion to Remand (4:16-cv-177, Doc. 17). By recent order of Magistrate Judge Ray, the parties were instructed to file consolidated briefs on the above pending matters. (4:16-cv-127, Doc. 34 at 2.) Plaintiff Gulfstream Aerospace Corporation ("Gulfstream") and Defendant OCELTIP Aviation 1 PTY Ltd ("OCELTIP") have complied (4:16-cv-127, Doc. 35, Doc. 37) and the above motions are ripe for review. After careful consideration, the Court finds that Plaintiff Gulfstream's Amended Application to Confirm Arbitration Award (4:16-cv-127, Doc. 14) is **GRANTED**, Defendant OCELTIP's Application to Vacate (4:16-cv-177, Doc. 1) is **DENIED**, and

Defendant OCELTIP's Motion to Remand (4:16-cv-177, Doc. 17) is **DENIED**.

## BACKGROUND

On October 17, 2011, the parties entered into a sales agreement for the purchase of a Gulfstream G550 aircraft and subsequently amended that agreement on September 28, 2012 (collectively the "Sales Agreement"). (4:17-cv-127, Doc. 1 at 2.) Pursuant to the Sales Agreement, Plaintiff Gulfstream was to manufacture and sell to Defendant OCELTIP a new G550 business jet aircraft. (4:16-cv-177, Doc. 1, Attach. 1 at 34.) Defendant OCELTIP is an Australian limited liability company and Plaintiff Gulfstream is a Georgia corporation. (Id.) The underlying dispute arose when Plaintiff Gulfstream terminated the Sales Agreement after Defendant OCELTIP failed to make a payment when due and subsequently failed to cure.[1] (Id. at 54.) OCELTIP submitted its demand for arbitration to the American Arbitration Association ("AAA") on September 10, 2014 and the arbitration ultimately occurred on November 2-4, 2015 in Savannah, Georgia. (4:16-cv-177, Doc. 1, Attach. 1 at 36, 40.)

Section 4.3.1. of the Sales Agreement provided that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration

---

[1] The full factual background of the underlying dispute can be found in the Final Award. (See 4:16-cv-177, Doc. 1, Attach. 1 at 42-63.)

> administered by the American Arbitration
> Association ("AAA") in accordance with the
> provisions of its Commercial Arbitration
> Rules, including as appropriate its
> Procedures for Large, Complex Commercial
> Disputes or its International Dispute
> Resolution Procedures, and judgment on the
> award rendered by the arbitrator(s) may be
> entered by any court having jurisdiction
> thereof.

(4:17-cv-177, Doc. 1, Attach. 1 at 92.) In section 4.3.3, the

Sales Agreement provides, in relevant part, that:

> The place of arbitration shall be Savannah,
> Georgia. This contract shall be governed by
> the laws of the State of Georgia, and the
> U.N. Convention on Contracts for the
> International Sale of Goods (frequently
> referred to as the "UNCISG") shall not
> apply, without reference to rules regarding
> conflicts of law.

(Id.)

The arbitral tribunal of three neutral arbitrators (the

"Tribunal") issued a final arbitration award in Savannah,

Georgia on March 15, 2016 in Oceltip Aviation 1 Pty Ltd v.

Gulfstream Aerospace Corporation, ICDR Case No. 01-14-0001-3711

(the "Final Award"). (4:16-cv-177, Doc. 1, Attach. 1 at 33-84.)

The Tribunal found for Plaintiff Gulfstream and against

Defendant OCELTIP and awarded Plaintiff Gulfstream the total sum

of $1,096,160.32 comprised of: (1) $1,000,000.00 on Plaintiff

Gulfstream's claim for the unpaid portion of the $8 million

liquidated damages amount specified in Section 3.3.2(i) of the

Sales Agreement, (2) $94,467.00 under Procedural Order No. 6 as

attorneys' fees and costs related to defending OCELTIP's claim for anticipatory repudiation, and (3) $1,693.32 as the amount of hearing expenses due to Plaintiff Gulfstream pursuant to the parties' e-mail agreement. (Id. at 77.) The Tribunal also found that Plaintiff Gulfstream was to pay Defendant OCELTIP $2,750.01 representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Defendant OCELTIP for the shared administrative fees and costs of the arbitration. (Id. at 78.)

On May 31, 2016, Plaintiff Gulfstream filed its Application to Confirm Final Arbitration Award Against OCELTIP. (4:16-cv-127, Doc. 1, as amended, Doc. 14.) Opposing confirmation, Defendant OCELTIP filed an Application to Vacate the final arbitration award in the Superior Court of Chatham County in June 2016. (4:17-cv-177, Doc. 1.) Plaintiff Gulfstream subsequently removed the Application to Vacate to this Court and it was filed under Civil Action Number 4:16-cv-177. (Id.) Defendant OCELTIP filed its Motion to Remand to Superior Court (4:16-cv-177, Doc. 17), to which Plaintiff Gulfstream responded (4:16-cv-177, Doc. 19). By order dated August 22, 2016, Magistrate Judge Smith consolidated 4:16-cv-177 into this instant case, 4:16-cv-127. (4:16-cv-177, Doc. 21). By recent order of Magistrate Judge Ray, the parties were instructed to file consolidated briefs on the above pending matters. (4:16-cv-

4

127, Doc. 34 at 2.) Plaintiff Gulfstream and Defendant OCELTIP
have complied (4:16-cv-127, Doc. 35, Doc. 37).

**ANALYSIS**

I.   <u>DEFENDANT OCELTIP'S MOTION TO REMAND</u>

In the companion case, Defendant OCELTIP moved to remand
the application to vacate the arbitration award back to the
Superior Court of Chatham County, Georgia. (4:17-cv-177, Doc.
17.) Defendant OCELTIP has also filed its Consolidated Brief in
Support of its Motion to Remand and Application to Vacate
Arbitration Award. (4:17-cv-127, Doc. 37.) Plaintiff Gulfstream
has replied (4:17-cv-177, Doc. 19), and filed its own
supplemental brief and replies (4:17-cv-127, Docs. 35, 39, 41).
For the reasons that follow, Defendant OCELTIP's Motion to
Remand is **DENIED.**

Defendant OCELTIP argues that remand is proper because the
Sales Agreement specifies that Georgia arbitration law applies
and that, accordingly, Georgia superior courts have exclusive
jurisdiction to vacate arbitration awards or, alternatively,
Plaintiff Gulfstream has waived the right of removal. Defendant
OCELTIP contends that the Court lacks subject matter
jurisdiction to consider Plaintiff Gulfstream's application to
confirm the final arbitration award and also lacks removal
jurisdiction to hear its application to vacate the arbitration
award. (4:16-cv-127, Doc. 37 at 2.)

The Court first reaches the threshold issue of subject matter jurisdiction. The Court finds that it has subject matter jurisdiction over Plaintiff Gulfstream's application to confirm the final arbitration award as well as Defendant OCELTIP's application to vacate the arbitration award. As an initial point, the Sales Agreement falls within the scope of the Federal Arbitration Act ("FAA"). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") is implemented and enforced by Chapter 2 of the Federal Arbitration Act ("FAA Chapter 2"), 9 U.S.C. § 201 et seq. Chapter 2 of the FAA applies to international arbitral proceedings in which "one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States." Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1441 (11th Cir. 1998); see also 9 U.S.C. § 202. In this case, Defendant OCELTIP is an Australian corporation organized under the laws of Australia. (4:16-cv-177, Doc. 1, Attach. 1 at 12.) Therefore, this Court finds that it has subject matter jurisdiction over Plaintiff Gulfstream's Application to Confirm the Final Award. Indus. Risk, 141 F.3d at 1441; 9 U.S.C. § 203.

The Court also finds that it has jurisdiction over the removed case—Defendant OCELTIP's Application to Vacate. Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte

6

Int'l GmbH, 921 F.3d 1291, 1300 (11th Cir.), cert. denied, 140 S. Ct. 124, 205 L. Ed. 2d 130 (2019) (finding that the district court had subject-matter jurisdiction over the removed petition to vacate the arbitration award that was filed in state court); see also 9 U.S.C. § 205 (providing that removal to a district court is proper where the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention).

Defendant OCELTIP also argues that the Sales Agreement contains a choice of law provision selecting Georgia law and that the provision thus incorporated the Georgia Arbitration Code ("GAC") into the parties' agreement to arbitrate. (4:16-cv-177, Doc. 17 at 6.) As a result, Defendant OCELTIP argues that, under GAC § 4(a)(1) and (b)(1), the superior court for the county where the arbitration took place has exclusive jurisdiction to hear vacatur actions under the GAC. (Id.) The question now is whether the parties contractually agreed in the Sales Agreement that the GAC applies to any arbitration rather than Chapter 2 of the FAA.

Section 4.3.1. of the Sales Agreement provides that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with the provisions of its Commercial Arbitration Rules, including as appropriate its

> Procedures for Large, Complex Commercial
> Disputes or its International Dispute
> Resolution Procedures, and judgment on the
> award rendered by the arbitrator(s) may be
> entered by any court having jurisdiction
> thereof.

(4:17-cv-177, Doc. 19, Attach. 1 at 4.) In section 4.3.3, the

section provides, in relevant part, that:

> The place of arbitration shall be Savannah,
> Georgia. This contract shall be governed by
> the laws of the State of Georgia, and the
> U.N. Convention on Contracts for the
> International Sale of Goods (frequently
> referred to as the "UNCISG") shall not
> apply, without reference to rules regarding
> conflicts of law.

(Id.) As stated, Defendant OCELTIP contends the reference to

Georgia law was an incorporation of all Georgia law—including

the GAC. For the reasons that follow, this Court is not

persuaded.

Defendant OCELTIP relies heavily on Volt Info. Scis., Inc.

v. Bd. Of Trustees of Leland Stanford Junior Univ., 489 U.S.

468, 477, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989). In

Volt, the contract included a provision to arbitrate all

disputes between the parties "arising out of or relating to this

contract or the breach thereof." 489 U.S. at 470, 109 S. Ct. at

1251. The contract also contained a choice-of-law provision that

provided that the contract was to be governed "by the law of the

place where the Project is located." Id. After a dispute arose,

one party, Volt, made a demand for arbitration, and the other party, Stanford, filed an action in California state court. Id., 489 U.S. at 470-71, 109 S. Ct. at 1251. Volt petitioned the superior court to compel arbitration and Stanford, in turn, moved to stay arbitration pursuant to a provision of California arbitration law. Id.

The superior court stayed the arbitration pending the outcome of the litigation, and the California Court of Appeal affirmed, finding that the parties had incorporated the California rules of arbitration into the agreement by specifying that their contract would be governed by the law of the place where the project is located. Id., 489 U.S. at 471-72, 109 S. Ct. at 1252. Volt appealed to the United States Supreme Court. Id. The United States Supreme Court affirmed the California Court of Appeal and found that "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Id., 489 U.S. at 479, 109 S. Ct. at 1256.

After Volt, the Supreme Court decided Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53, 115 S. Ct. 1212, 1214, 131 L. Ed. 2d 76 (1995). The contract in Mastrobuono contained a general New York choice of law clause and also

provided that arbitration would be completed in accordance with the rules of the National Association of Securities Dealers. 514 U.S. at 58, 115 S. Ct. at 1217. A dispute arose and the issue was arbitrated. The panel of arbitrators awarded punitive damages and the respondents argued before the United States Supreme Court that the arbitral panel had no authority to award punitive damages because New York law limited the power to award punitive damages to judicial tribunals. Id., 514 U.S. at 54-55, 115 S. Ct. at 1215. In response, petitioners contended that the FAA preempted New York law to the extent that it prohibited arbitrators from awarding punitive damages because the arbitral rules specifically chosen in the contract, the rules of the National Association of Securities Dealers, does not bar the award of punitive damages. Id., 514 U.S. at 56, 115 S. Ct. at 1215.

Ultimately, the Supreme Court found that

> the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

Mastrobuono, 514 U.S. at 63-64, 115 S. Ct. at 1219.

Since <u>Volt</u> and <u>Mastrobuono</u>, federal circuits have routinely held that parties may agree to state law rules for arbitration even if such rules are inconsistent with those set forth in the FAA, but that the parties must clearly evince their intent to be bound by such rules. <u>Sovak v. Chugai Pharm. Co.</u>, 280 F.3d 1266, 1269 (9th Cir. 2002), opinion amended on denial of reh'g, 289 F.3d 615 (9th Cir. 2002) (finding that a general choice of law provision within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration); <u>Ferro Corp. v. Garrison Indus., Inc.</u>, 142 F.3d 926, 937 (6th Cir. 1998); <u>Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account</u>, 618 F.3d 277, 293 (3d Cir. 2010), as amended (Dec. 7, 2010) ("We require the parties to express a 'clear intent' to apply state law vacatur standards instead of those of the FAA."). Likewise, the United States Court of Appeals for the Fifth Circuit in <u>Action Indus., Inc. v. U.S. Fid. & Guar. Co.</u>, 358 F.3d 337, 342 (5th Cir. 2004), held that "[i]n the wake of <u>Mastrobuono</u>, this Court has held that a choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." Thus, in the Fifth Circuit, arbitration under non-FAA rules is permitted "if a contract expressly references state arbitration law, or if its arbitration clause specifies with certain exactitude how the FAA rules are to be modified."

11

Id. at 341. "[T]he strong default presumption is that the FAA, not state law, supplies the rules for arbitration." Sovak, 280 F.3d at 1269; see also Ario, 618 F.3d at 292 ("[T]he FAA standards control in the absence of contractual intent to the contrary." (internal quotation marks and citations omitted)).

Although neither party has provided this Court with binding caselaw from the Eleventh Circuit on this issue, nor has the Court found any, the Eleventh Circuit did cite to Action Indus., Inc. v. U.S. Fid. & Guar. Co., 358 F.3d 337, 342 (5th Cir. 2004), in the unpublished opinion Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc., 718 F. App'x 776, 780 n.3 (11th Cir. 2017). In JAKKS, the Eleventh Circuit cited to Action Indus.'s holding "that a general choice-of-law provision did not express the parties' clear intent to depart from the Federal Arbitration Act's vacatur standard" when stating that it did not reach the question of whether the choice of law provisions were "sufficient to invoke review under the Georgia Arbitration Code." Id.

This Court finds the Fifth Circuit and other circuits' reasoning persuasive and finds that the parties' choice of law provision does not express the parties' intent to depart from the FAA's standard of vacatur. Moreover, the Court is not persuaded that Rintin Corp., S.A. v. Domar, Ltd., 476 F.3d 1254, 1256 (11th Cir. 2007) requires a different result. Defendant

OCELTIP argues that Rintin provides that "parties may contract for the application of state arbitration law in lieu of otherwise applicable Federal arbitration law," and that, accordingly, Rintin requires this Court to find that the GAC applies. (Doc. 40 at 6.) In Rintin, the Eleventh Circuit did apply Florida arbitration law. However, the arbitration clause in the parties' agreement specified that " '[a]ny dispute which may arise from the interpretation, execution or termination of this agreement or from the breach thereof . . . shall be submitted to arbitration . . . **according to the provisions of the Florida International Arbitration Act** and in compliance with the rules of the American Arbitration Association (AAA).' " Rintin, 476 F.3d at 1256 (emphasis added). Thus, in Rintin, the parties specifically stated that the Florida International Arbitration Act was to apply. The parties did not so specify in the Sales Agreement here. Therefore, the Court finds that Rintin does not conflict with this Court's holding, but rather demonstrates the Eleventh Circuit's position that, like the Fifth Circuit, where parties' contract "expressly references state arbitration law," arbitration under non-FAA rules is permitted. Action Indus., 358 F.3d at 341. See also Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp., 562 F. App'x 828, 832 (11th Cir. 2014) ("Parties that want their arbitration agreements enforced by an authority that allows for more

expansive judicial review must specifically designate such state statutory or common law alternatives to the FAA in their arbitration agreements.")

Moreover, construing the Sales Agreement as a whole and giving effect to each provision to harmonize the provisions together, the Court is not convinced that the reference to Georgia law was a clear intent to apply the GAC and not merely to apply Georgia substantive law to any dispute arising under the Sales Agreement. First, the provision delineating the rules for the arbitration, Section 4.3.1. of the Sales Agreement, stated that the arbitration was to be administered by the AAA and that the judgment could be entered by "any court having jurisdiction." The choice of law provision, while nested under the arbitration heading, is contained in another section in which the parties chose Georgia law to govern and disclaimed the application of the U.N. Convention on Contracts for the International Sale of Goods ("UNCISG"). Section 4.3.3's specific exclusion of the UNCISG in the same sentence as the selection of Georgia law to govern "without reference to rules regarding conflicts of law" counsels against a finding that this choice of law clause is more than "a substitute for ordinary conflict-of-laws analysis" and was intended to displace the FAA in lieu of the GAC. Mastrobuono, 514 U.S. at 59, 115 S. Ct. at 1217. The

14

parties expressly disclaimed application of the UNCISG and could have disclaimed the FAA if the GAC was intended to apply.

Finally, the Court briefly addresses Defendant OCELTIP's argument that this Court must defer to the Panel's statement in the final award that "the arbitration [is] to be governed by the laws of the State of Georgia . . ." (Doc. 17 at 1.) The final award does state this but elsewhere provides that the arbitration was administered under the International Centre for Dispute Resolution's ("ICDR") International Rules, the ICDR's Guidelines for Arbitrators Concerning Exchange of Information, and the Code of Ethics for Arbitrators in Commercial Disputes. (4:16-cv-177, Doc. 1, Attach. 1 at 33, 35.) Additionally, the Tribunal certified "for purposes of Article I of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, and consistent with Section 4.3 of the Sales Agreement . . . ." (Id. at 79-81.) Thus, it is not clear that the Tribunal actually applied Georgia arbitration law and whether the statement above was indicating the application of Georgia substantive law to the dispute. For the reasons stated above, the Court **DENIES** Defendant OCELTIP's Motion to Remand.

II.  DEFENDANT OCELTIP'S APPLICATION TO VACATE

Defendant OCELTIP argues in its Application to Vacate Final Arbitration Award that the Tribunal manifestly disregarded the law and that the award should be vacated pursuant to O.C.G.A.

§  9-9-13(b)(5).  (4:16-cv-177,  Doc.  1,  Attach.  1  at  17.)
Defendant OCELTIP makes no argument that the award should be
vacated  pursuant  to  the  FAA  Chapter  2  or  the  New  York
Convention.  The  Court  shall  review  both  and,  upon  finding  no
grounds  to  vacate  or  refuse  confirmation,  takes  up  Plaintiff
Gulfstream's Amended Application to Confirm.

    A. The GAC

    First,  the  Court  finds  that  O.C.G.A.  §  9-9-13(b)(5)  does
not warrant vacating this award.[2]  Even  if  the  GAC  governed  the

---

[2] The  Court  also  notes  skepticism  that  the  GAC,  and  not  the
Georgia  International  Commercial  Arbitration  Code  ("GIAC"),
O.C.G.A.  §  9-9-20  et seq.,  would  apply  to  an  application  to
vacate  the  final  award  in  this  action.  The  GIAC  applies  to
international commercial arbitrations. O.C.G.A. § 9-9-21(a). An
arbitration  is  considered  international  if,  among  other  things,
the  parties  "have  their  places  of  business  in  different
countries  at  the  time  of  the  conclusion  of  such  arbitration
agreement." O.C.G.A. § 9-9-21(c)(1). As stated above, Defendant
is  an  Australian-based  company  organized  under  the  laws  of
Australia (4:16-cv-177, Doc. 1, Attach. 1 at 17) and Plaintiff
Gulfstream is a domestic corporation (Id. at 34). Defendant
OCELTIP  contends  that  the  GIAC  does  not  apply  to  this  case  as  it
was  enacted  in  July  2012  and  the  Sales  Agreement  was  executed  in
2011. (Doc. 22 at 7, 17.) However, Defendant OCELTIP also states
that  the  parties  entered  into  Amendment  No.  1  of  the  Sales
Agreement on September 28, 2012. (4:16-cv-177, Doc. 1, Attach. 1
at  6.)  Thus,  at  the  time  that  the  parties  executed  their
amendment  to  the  Sales  Agreement,  the  GIAC  was  in  effect.
Nevertheless,  because  the  GIAC's  grounds  for  opposing
confirmation  of  an  arbitration  award  is  substantially  the  same
as  the  grounds  provided  for  Chapter  2  of  the  FAA,  the  Court  need
not provide the same analysis again. Compare O.C.G.A. § 9-9-56
with 9 U.S.C. § 207 ("The court shall confirm the award unless
it  finds  one  of  the  grounds  for  refusal  or  deferral  of
recognition  or  enforcement  of  the  award  specified  in  the  said
Convention.") and New York Convention, Art. V(1)-(2). Should the
GIAC apply, Defendant OCELTIP's application to vacate is denied

vacatur of the Final Award, Defendant OCELTIP's arguments for vacating the final arbitration award pursuant to O.C.G.A. § 9-9-13(b)(5) fail.

In its Application to Vacate, Defendant OCELTIP contends that the Tribunal manifestly disregarded the law on five separate and dispositive issues. (4:16-cv-177, Doc. 1, Attach. 1 at 14.) O.C.G.A. § 9-9-13(b)(5) provides that an arbitration award shall be vacated by the court upon application of one of the parties if the court finds that the rights of the parties have been prejudiced by "[t]he arbitrator's manifest disregard of the law." The "disregard must be both evident and intentional. An arbitration board that incorrectly interprets the law has not manifestly disregarded it. It has simply made a legal mistake. To manifestly disregard the law, one must be conscious of the law and deliberately ignore it." Savannah Dodge, Inc. v. Bynes, 291 Ga. App. 281, 282, 661 S.E.2d 660, 661 (Ga. Ct. App. 2008) (internal citations and quotation marks omitted). There must be clear evidence of the arbitrator's intent to purposefully disregard the law. Id., 291 Ga. App. at 283, 661 S.E.2d at 662. The "concrete evidence" of the arbitrator's intent can come from the findings of the arbitrator or in the transcription of the arbitration hearing. Id.

---

for the same reasons that it is denied pursuant to 9 U.S.C. § 207.

First, Defendant OCELTIP argues that the Tribunal manifestly disregarded the law by holding that the "liquidated damages provision would be unenforceable under certain circumstances, recited the contract provision where such circumstances existed, then disregarded its own holding and found the provision enforceable anyway." (Id. at 18.) Defendant OCELTIP contends that the Tribunal

> found that OCELTIP had cited four (4) cases for the rule that a purported liquidated damages provision does not liquidate damages when the non-breaching party may elect **between** liquidated damages and other damages . . . the Tribunal then interpreted the cases to hold that **only** where the non-breaching party may recover "**both** liquidated damages **and** other damages" does such a provision not liquidate damages.

(Id. at 19 (emphasis in original).) The Tribunal noted these four cited cases and then distinguished those cases from the instant case. (4:16-cv-177, Doc. 1, Attach. 1 at 70.) At the most, Defendant OCELTIP is arguing that the Tribunal incorrectly applied the law.[3] This is insufficient to show a manifest

---

[3] Defendant OCELTIP also argues that Section 3.3.2 of the Sales Agreement "permits Gulfstream to do just exactly what the Supreme Court forbids: retain and/or collect $8 million in liquidated damages under § 3.3.2(i) or sue (arbitrate) for a greater amount under § 3.3.2(ii)." (4:16-cv-177, Doc. 1, Attach. 1 at 20.) However, from this Court's review of the Sales Agreement, Section 3.3.2(ii) makes no reference to the ability of Gulfstream to sue or arbitrate for actual damages—the provision provides that, in lieu of collecting/retaining liquidated damages, Gulfstream can opt to resell the aircraft to

disregard of the law. See Savannah Dodge, 291 Ga. App. at 282-283, 661 S.E.2d at 661-62; SCSJ Enters., Inc. v. Hansen & Hansen Enters., Inc., 319 Ga. App. 210, 215, 734 S.E.2d 214, 219-20 (Ga. Ct. App. 2012) (finding that the fact that the arbitrator rejected the legal arguments does not mean that he ignored the arguments and that "this is true even where the arbitrator misconstrues the law.").

Second, related to its first argument, Defendant OCELTIP argues that the Tribunal "ignored the [Se. Land Fund, Inc. v. Real Estate World, Inc., 237 Ga. 227, 230-31, 227 S.E.2d 340, 343 (Ga. 1976)] holding, intentionally and irrationally concocting a fiction that Se. Land Fund 'turned on the fact that the remedy provision in issue allowed the non-breaching party to recover both liquidated damages and other damages.' " (Id. at 21.) For the same reasons stated above, Defendant OCELTIP does not demonstrate that the Tribunal was conscious of the law and deliberately ignored it. The Tribunal addressed this case and distinguished it.

Third, Defendant OCELTIP argues that the Tribunal manifestly disregarded the law by ignoring O.C.G.A. § 13-6-7 and O.C.G.A. § 11-2-718(1). Specifically, Defendant OCELTIP again contends that the Tribunal ignored the authorities it cited.

_____

a third-party and keep the proceeds less OCELTIP's deposits as set out in the subsection.

(4:16-cv-177, Doc. 1, Attach. 1 at 24.) Defendant OCELTIP has not presented "concrete evidence" of the Tribunal's intent to deliberately ignore these Georgia statutes. Savannah Dodge, 291 Ga. App. at 283, 661 S.E.2d at 662.

Fourth, Defendant OCELTP contends that "[t]he Tribunal was aware of Georgia's policy against shotgun liquidated damages clauses, yet it ignored both [OCELTIP's] argument and dispositive authority." (Id. at 24.) Defendant OCELTIP argues that it explained the rule against shotgun liquidated damages provisions, that the Tribunal was conscious of the rule, and that the Tribunal deliberately ignored the rule and supporting authorities because it made no mention of the rule in the Final Award. (Id. at 28.) Assuming, as Defendant OCELTIP argues, that the Tribunal was conscious of the rule, Defendant OCELTIP must nevertheless demonstrate that the Tribunal "intentionally and knowingly chose to ignore" it. Savannah Dodge, 291 Ga. App. at 282, 661 S.E.2d at 661. Defendant OCELTIP argues that the Tribunal knowingly chose to ignore the rule because it did not reference the Georgia rule against shotgun liquidated damages provisions or otherwise address OCELTIP's argument. (4:16-cv-177, Doc. 1, Attach. 1 at 28.)

The Court first notes that Defendant OCELTIP presented the specific "shotgun liquidated damages provision" argument in support of its contention that "the parties did not pre-estimate

anticipated or probable damages or attempt to set the liquidated damages amount based thereupon." (Id. at 199.) The argument was presented within the section of Defendant OCELTIP's brief arguing that $8 million was not a reasonable pre-estimate of probable loss. (Id. at 118-120.) The Tribunal did in fact consider the reasonableness of the $8 million in light of anticipated harm and discussed at length the evidence of how the sum of $8 million was arrived at. (Id. at 72; 60-63.)

Additionally, Georgia law requires more than the mere omission of reference to parties' arguments to demonstrate a manifest disregard of the law. JAKKS, 718 F. App'x at 781 (stating that, under Georgia law, it is not enough that the correct rule was communicated to the arbitrator and that it must be shown that the arbitrator has the specific intent to disregard it) (citing ABCO Builders, Inc. v. Progressive Plumbing, Inc., 282 Ga. 308, 310, 647 S.E.2d 574, 576 (Ga. 2007)). Rather, the Tribunal went through the "tripartite inquiry" established by Se. Land Fund, 237 Ga. at 230, 227 S.E.2d at 343, to determine if the contract provision is enforceable. (4:16-cv-177, Doc. 1, Attach. 1 at 69-73.) Part of the inquiry includes finding that the "sum stipulated must be reasonable pre-estimate of the probable loss." Se. Land Fund, 237 Ga. at 230, 227 S.E.2d at 343. Defendant OCELTIP has not pointed to any concrete evidence that the Tribunal intentionally

ignored Georgia's general policy against shotgun liquidated damages when finding that the $8 million liquidated damages amount was a reasonable estimate of anticipated harm. ABCO, 282 Ga. at 309–10, 647 S.E.2d at 576 (finding the arbitration panel did not manifestly disregard the law where the panel was presented with the proper legal formula to calculate damages, but from the face of the award, did not employ the formula because there was no concrete evidence that the panel purposefully intended to disregard applicable law).

Fifth, and finally, Defendant OCELTIP argues that the Tribunal manifestly disregarded the law because it wholly ignored the ground supporting OCELTIP's allegation that Gulfstream failed to mitigate damages. (4:16-cv-177; Doc. 1, Attach. 1 at 29.) Defendant OCELTIP's argument attempts to split hairs—it argues that the Tribunal ignored its contention that "Gulfstream failed to mitigate damages because Gulfstream demanded a fee [of $1 million] as a pre-condition to mitigating damages" and instead based its finding on an argument it did not make to wit " 'that Gulfstream failed to mitigate its damages when it "refused" to assign the Agreement.' " (Id.) However, in the very next paragraph, Defendant OCELTIP argues that its argument was that "there was never an opportunity to enter into an assignment because Gulfstream refused to even consider the subject unless paid a fee." (Id. at 30.)

In sum, the argument is that Gulfstream failed to mitigate damages because it failed to consider assignment without the payment of the $1 million. The crux of this argument is that Gulfstream failed to mitigate damages by failing to accept assignment of the Sales Agreement. Defendant OCELTIP's argument now that the Tribunal manifestly disregarded the law because it did not specifically reference the payment of the fee along with the matter of assignment is unavailing.

The Tribunal did consider Defendant OCELTIP's argument that Gulfstream refused to consider an assignment—specifically, the Tribunal found that "there was no agreement to assign at the time [OCELTIP] raised the matter of assignment with Gulfstream" because the Sales Agreement had already been terminated. (Id. at 67.) The Tribunal also found that the assignment was never intended to be an assignment to mitigate damages, rather it was proposed "as an essential component of its [OCELTIP's] post-termination efforts to obtain financing so that [OCELTIP] could once again salvage its agreement and purchase a G550." (Id. at 68.) Again, Georgia law requires more than the mere omission of reference to parties' arguments to demonstrate a manifest disregard of the law. JAKKS, 718 F. App'x at 781. The only Georgia law or authority Defendant OCELTIP cites is O.C.G.A. § 13-6-5 which provides that a party injured by a breach of contract must lessen the damages by the use of ordinary care and

diligence. The Tribunal discussed Plaintiff Gulfstream's duty to mitigate damages and found that there was no failure by Gulfstream to mitigate its damages. Accordingly, for the reasons stated, even if the GAC grounds for vacatur applied in this action, Defendant OCELTIP's arguments fail.

B. <u>FAA Chapter 2</u>

Chapter 2 of the FAA does not expressly provide for vacating awards, however, it does provide grounds for opposing the enforcement of awards. 9 U.S.C. § 207; <u>Indus. Risk</u>, 141 F.3d at 1441 (stating that the arbitral panel's award must be confirmed unless the appellants could "successfully assert one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention."). The United States Court of Appeals for the Eleventh Circuit has recently confirmed that the seven defenses enumerated in Article V of the New York Convention provide the sole grounds for vacating an award subject to the New York Convention. <u>Inversiones</u>, 921 F.3d at 1301.

Article V of the New York Convention reads:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>    a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the

said agreement is not valid under the
law to which the parties have
subjected it or, failing any
indication thereon, under the law of
the country where the award was made;
or

b) The party against whom the award is
invoked was not given proper notice of
the appointment of the arbitrator or
of the arbitration proceedings or was
otherwise unable to present his case;
or

c) The award deals with a difference not
contemplated by or not falling within
the terms of the submission to
arbitration, or it contains decisions
on matters beyond the scope of the
submission to arbitration, provided
that, if the decisions on matters
submitted to arbitration can be
separated from those not so submitted,
that part of the award which contains
decisions on matters submitted to
arbitration may be recognized and
enforced; or

d) The composition of the arbitral
authority or the arbitral procedure
was not in accordance with the
agreement of the parties, or, failing
such agreement, was not in accordance
with the law of the country where the
arbitration took place; or

e) The award has not yet become binding
on the parties, or has been set aside
or suspended by a competent authority
of the country in which, or under the
law of which, that award was made.

2. Recognition and enforcement of an
arbitral award may also be refused if the
competent authority in the country where
recognition and enforcement is sought
finds that:

a) The subject matter of the difference
is not capable of settlement by
arbitration under the law of that
country; or

25

> b) The recognition or enforcement of the award would be contrary to the public policy of that country.

<u>Indus. Risk</u>, 141 F.3d at 1442 n.8.

In its Memorandum in Support of its Application to Vacate Final Arbitration Award, Defendant OCELTIP did not advance any of the above grounds for opposing the confirmation of the Final Award. (4:16-cv-177, Doc. 1, Attach. 1.) Additionally, Defendant OCELTIP has not advanced any of these grounds for opposing confirmation in response to Plaintiff Gulfstream's Amended Application to Confirm Final Arbitration Award. (<u>See</u> 4:16-cv-127, Docs. 7, 18, 37, 40, 42.) Accordingly, the Court finds no bases for vacating or refusing to confirm the Final Award under either the GAC or the New York Convention. As a result, Defendant OCELTIP's Application to Vacate is **DENIED.**

III.  <u>PLAINTIFF GULFSTREAM'S AMENDED APPLICATION TO CONFIRM ARBITRATION AWARD</u>

In its Amended Application to Confirm, Plaintiff Gulfstream moves for confirmation of the Final Award pursuant to 9 U.S.C. § 207 and contends that none of the grounds for refusal or deferral of recognition of the award as specified in the New York Convention applies. (4:16-cv-127, Doc. 14 at 4.) As discussed above, Defendant OCELTIP did not advanced any grounds for opposing confirmation under the New York Convention and the Court finds no basis for otherwise vacating the award. This

Court must "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Accordingly, Plaintiff Gulfstream's Amended Application to Confirm is **GRANTED**.

Additionally, Plaintiff Gulfstream requests this Court include two items of interest in its order confirming the Final Award. First, Plaintiff Gulfstream requests that this Court include seven percent (7%) post-award, prejudgment interest on the award amount for the time period between the date of March 15, 2016, the date of the Final Award, and the date of this Court's confirmation of the Final Award. (4:16-cv-127, Doc. 14 at 5.) Second, Plaintiff Gulfstream requests that this Court include in its order an award of post-judgment interest pursuant to 28 U.S.C. § 1961.

First, the Court finds that Plaintiff Gulfstream should be awarded post-arbitral award, prejudgment interest under Eleventh Circuit case law. Because this Court's jurisdiction is based on Chapter 2 of the FAA, "federal law allows awards of post-arbitral-award, prejudgment interest." Indus. Risk, 141 F.3d at 1446. The award of prejudgment interest is committed to "the district court's sound discretion" but "should normally be awarded when damages have been liquidated by an international arbitral award." Id. at 1446-47 (internal citations omitted). As

27

to the interest rate to be awarded, "[i]n the absence of a controlling statute, federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is also a matter for their discretion." Id. at 1447. The choice, however, is guided by "principles of reasonableness and fairness, by relevant state law, and by the relevant fifty-two week United States Treasury bond rate, which is the rate that federal courts must use in awarding post-judgment interest." Id. Plaintiff Gulfstream has requested a rate of 7% based on O.C.G.A. § 7-4-2 and § 7-4-15. (4:16-cv-127, Doc. 14 at 5.) The Court finds the requested rate of 7% per annum of simple interest to be reasonable.

Next, as to the grant of post-judgment interest, Plaintiff Gulfstream is correct that such an award is governed by 28 U.S.C. § 1961. 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Accordingly, Plaintiff Gulfstream will be able to pursue post-judgment interest on any judgment entered by this Court.

**CONCLUSION**

For the reasons stated herein, Plaintiff Gulfstream's Amended Application to Confirm Arbitration Award (4:16-cv-127, Doc. 14) is **GRANTED**, Defendant OCELTIP's Application to Vacate

28

(4:16-cv-177, Doc. 1) is **DENIED**, and Defendant OCELTIP's Motion to Remand (4:16-cv-177, Doc. 17) is **DENIED**.

As a result, the ICDR Final Award, <u>OCELTIP Aviation 1 PTY Ltd v. Gulfstream Aerospace Corporation</u>, ICDR Case No. 01-14-0001-3711 (Mar. 15, 2016) (4:16-cv-177, Doc. 1, Attach. 1 at 33-84) is **CONFIRMED** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Gulfstream and against Defendant OCELTIP in the total amount of **$1,096,160.32** in accordance with that Final Award, together with post-award, prejudgment interest in the amount of 7% per annum for the time period between the date of March 15, 2016 to the date of this Order and post-judgment interest as calculated pursuant to 28 U.S.C. § 1961(a). The Clerk of Court is **FURTHER DIRECTED** to close this case.

SO ORDERED this 14th day of February 2020.

_____

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA